'ĪLIOʻULAOKALANI COALITION, a Hawaiʻi nonprofit corporation; Nā ʻImi Pono, a Hawaiʻi unincorporated association; and Kīpuka, a Hawaiʻi unincorporated association, Plaintiffs,

v.

Donald H. RUMSFELD, Secretary of Defense; and Francis J. Harvey, Secretary of the United States Department of the Army, Defendants.

No. CV 04–00502DAEBMK.

United States District Court,
D. Hawaiʻi.

April 25, 2005.

**1248**

David L. Henkin, Isaac H. Moriwake, Earthjustice Legal Defense Fund, Honolulu, HI, for ʻIlioʻUlaokalani Coalition, a Hawaiʻi nonprofit corporation, Naʻimi Pono, a Hawaiʻi unincorporated association, Kipuka, a Hawaiʻi unincorporated association, plaintiffs.

Harry Yee, Office of the United States Attorney, Honolulu, Barry A. Weiner, U.S. Department of Justice, Environment & Natural Resources Division, Thomas L. Sansonetti, U.S. Department of Justice, ENRD Wildlife & Natural, Resources Div, Washington, DC, for Donald H. Rumsfeld, Secretary of Defense, Les Brownlee, Acting Secretary of the United States Department of the Army, Francis J. Harvey, Secretary of the United States Department of the Army, defendants.

*ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT*

DAVID ALAN EZRA, Chief Judge.

The court heard Plaintiffs' Motion and Defendants' Cross–Motion on February 22, 2005. David Henkin, Esq., and Isaac Moriwake, Esq., appeared at the hearing on behalf of Plaintiffs; Harry Yee, Assistant United States Attorney, Barry Weiner, Department of Justice Attorney, Mark Katkow, Transformation Attorney, and Robert Luis, Senior Army Litigation Attorney, appeared at the hearing on behalf of Defendants. After reviewing the motions and the supporting and opposing memoranda, the court DENIES Plaintiffs' Motion for Summary Judgment and GRANTS Defendants' Cross–Motion for Summary Judgment.

Having carefully considered the record, including all motions, memoranda, and exhibits as more thoroughly detailed below, the court holds that Plaintiffs did not alert the Army to their concerns regarding the alternatives analysis during the PEIS public comment process and, therefore, Plaintiffs are precluded from challenging the alternatives analysis in the PEIS now for the first time before this court. Moreover, even if Plaintiffs had raised these issues in a timely manner, they would not succeed based on the merits of their claims as the Army has fully complied with NEPA. The court finds: 1) the Army complied with NEPA's public notice requirement; 2) the PEIS conducted by the Army fulfills the requirements of NEPA; and 3) the SBCT site-specific EIS complies with NEPA. Therefore, the court holds that the Army has fully complied with the relevant environmental statutes and may proceed with transformation of the 2nd Brigade in Hawaii.

## BACKGROUND

*Factual Background*

*Army Transformation and the Programmatic EIS*

On October 12, 1999, the Secretary of the Army and the Chief of Staff of the

Army articulated a vision for the Army ("Army Vision") to meet the challenges of the 21st century. The Army Vision addressed the need for a more responsive, deployable, agile, versatile, lethal, survivable, and sustainable Army unit. To achieve this vision, the Army proposed a thirty-year, phased and synchronized program of transformation. The proposal consists of three phases: the Initial Phase; the Interim Capability Phase; and the Objective Force Phase.

The Initial Phase involves the transformation of two Brigade units. The purpose of this phase was to validate an organizational and operational model for the new brigade combat teams. These "Interim Brigade Combat Teams" are now referred to as "Stryker Brigade Combat Teams" ("SBCT").

During the second phase, or the Interim Capability Phase, the Army plans to develop five to eight SBCT's. These SBCT's are intended to strategically place sustainable combat forces capable of reaching anywhere in the world in 4 days (96 hours). As part of the Interim Capability Phase, and currently at issue, is the Army's identification of a Hawai'i unit, the 2nd Brigade of the 25th Infantry Division, as one of the Army units to be transformed into a SBCT.

The last phase, or Objective Force Phase, intends to transform the SBCT's and the remaining Army forces into the Objective Force itself. The Objective Force will be configured to generally meet the capabilities set forth in the Army Vision and, more specifically, provide for a more rapid deployment and advanced weapons system.

On October 26, 2001, the Army issued a Notice of Availability ("NOA") for comment of the Draft Programmatic Environmental Impact Statement for Army Transformation ("DPEIS"). The comment period ended on December 10, 2001.

Defendants claim that only two comments were received, none of which came from Plaintiffs.

In February 2002, the Final Programmatic Environmental Impact Statement ("FPEIS") was issued, which retained the initial proposal that would evaluate the thirty-year, phased, and synchronized program of transformation.

From April 8 to June 15, 2002, the Army opened a public scoping period on its proposal. Plaintiffs claim that during this scoping period, there were numerous concerns by Hawai'i citizens regarding the environmental and cultural impacts that would result from the transformation of the 2nd Brigade. A number of alternatives were also allegedly suggested during the scoping period.

On April 11, 2002, the Army issued the Record of Decision ("ROD") for Army Transformation. The ROD required the Commanding General of the 25th ID (L) to determine the best way to achieve the Army Vision taking into consideration environmental factors. Depending on the outcome of the environmental impact analysis of the SBCT transformation, the ROD concluded to implement the transformation of the 2nd Brigade to a SBCT in Hawai'i.

In October 2003, the Army released for public review the draft Environmental Impact Statement ("DEIS"). The DEIS discussed various alternatives to transforming the 2nd Brigade to a SBCT in Hawai'i. Defendants assert that the alternatives were assessed based on the following criteria: "1) any alternative must provide realistic field training in Hawai'i while retaining the capability to meet current and evolving national defense requirements; 2) alternatives must be practical and feasible; and 3) each alternative (except for the No Action Alternative) must meet the training needs required for an SBCT." Plaintiffs claim that only three alternatives were

discussed in detail. Defendants expressed that a number of alternatives were considered, but were eliminated from the analysis because they did not meet the stated criteria. The three alternatives discussed in detail were: 1) the preferred alternative to fulfill the proposed action to transform the 2nd Brigade to an SBCT in Hawai'i ("Preferred Alternative"); 2) the alternative of reducing the amount of land to be acquired ("Reduced Land Alternative"); and 3) the alternative of no transformation of the 2nd Brigade in Hawai'i ("No Action Alternative").

Plaintiffs further claim that the DEIS failed to consider the alternative of relocating the 2nd Brigade to another location outside of Hawai'i, therefore violating the National Environmental Policy Act (NEPA). Defendants, however, claim that this alternative was eliminated because of the adverse impacts to training ability and air transport resources.

On May 28, 2004, the Final Environmental Impact Statement ("FEIS") was published in the Federal Register. Plaintiffs allege that the FEIS concedes to the negative environmental and cultural impacts that the transformation of the 2nd Brigade would have in Hawai'i. Plaintiffs again claim that the FEIS failed to consider the alternative of relocating the 2nd Brigade to another location, other than Hawai'i, which is in violation of NEPA. On July 7, 2004, the Army issued its FEIS ROD. The ROD selected the Preferred Alternative. Defendants claim that the Preferred Alternative was selected because it maximizes training time by conducting weapons qualification on Oahu and the environmental impact would have the same effect as the reduced land alternative.

*Public Participation in the NEPA Process*

On December 15, 2000, the Army published a Notice of Intent ("NOI") to prepare the Programmatic Environmental Impact Statement ("PEIS") for the Army's transformation in the Federal Register. The NOI describes the need for transformation and explains that transformation would create an interim force of six to eight interim brigades that is strategically more effective in addressing a wider range of threats and operating in a more complex set of environments than the nation's traditional forces. The NOI further explains that the environmental impacts of the proposed transformation will be addressed in the PEIS and describes the alternatives under consideration. The Army requested comments from the public through mail, facsimile, and the scoping page on the Army's website. Comments were to be received within thirty days and would be used to develop the PEIS and identify potential impacts of the proposed project.

Simultaneously, the Army published a formal nationwide notice in the USA Today announcing that the Army was seeking public input on a PEIS for implementation of the Army Transformation Campaign Plan. The advertisement stated the Army's proposed action and requested public comments by February 23, 2001 to assist in developing the proper scope of the PEIS and identifying potential environmental impacts. On June 10, 2001, while the scoping process was underway, an article published in The Honolulu Advertiser discussed the potential for an interim brigade to be stationed in Hawaii, although this was not a part of the official notice formally published by the Army.

On July 12, 2001, the Army officially announced the locations of the next four interim brigades, which included Hawaii's 2nd Brigade, 25th Infantry Division. The selections were made conditional upon the outcome of the ongoing PEIS. The announcement indicated these interim brigades would be Pacific-postured, world-

wide deployable formations in support of emerging National strategy.

The announcement by the Army generated news stories in Honolulu. Both The Honolulu Advertiser and the Honolulu Star–Bulletin published articles in July 2001 on the stationing of an interim brigade in Hawaii. These articles discussed the transformation of the 2nd Brigade and the potential impacts of transformation.

On October 26, 2001, the Army published the Notice of Availability ("NOA") of the Draft PEIS for Army Transformation in the Federal Register. The Army followed the publishing of the NOA with a formal nationwide notice in USA Today on October 31, 2001. The Federal Register notice and the notice in the USA Today announced the availability of the draft PEIS for a forty-five day public comment period. Both public notices identify numerous points of contact for additional information and provide a website where a copy of the draft PEIS can be found. The draft PEIS discussed the transformation of the 2nd Brigade in Hawaii.

Before the NOA was published, the Environmental Protection Agency ("EPA") requested that the Army provide copies of the draft PEIS to all of the EPA Regions, to which the Army agreed. In December 2001, the Army also gave briefings on the draft PEIS to EPA and the Council on Environmental Quality ("CEQ"). The EPA and CEQ commended the Army on its preparation of the PEIS. Ultimately, only 17 individuals requested and were provided copies of the draft PEIS. The Army received a limited number of comments from EPA and a private citizen and responded to these comments in the final PEIS.

In the March 8, 2002 Federal Register, EPA published a notice of availability of the Final PEIS for Army Transformation. The Final PEIS discussed the concept of the interim brigades, including the tentative plan to transform the 2nd Brigade in Hawaii, that transformation would occur in place and relocation was not expected, and further site-specific analysis would be prepared in a subsequent EIS. The Final PEIS also noted that the Army had consulted with EPA, CEQ, the Advisory Council on Historic Preservation, the U.S. Forrest Service, and the Department of the Interior in preparing the PEIS.

On April 11, 2002, the Army signed the Record of Decision ("ROD") for the Army Transformation Program, which included the decision to transform the 2nd Brigade in Hawaii.

*Public Participation in the Site–Specific EIS*

While the FPEIS was available for public review and comment, the Army published its NOI to prepare a site-specific EIS ("SEIS") for transformation of the 2nd Brigade in Hawaii on March 4, 2002. Following publication of the NOI, public notices were published in major newspapers on the islands of Hawaii and Oahu announcing the time and location of several public scoping meetings. The public scoping period began on April 8, 2002 and, based on the public's request, was extended by thirty days until July 15, 2002. Scoping meetings were held between April 16 and 30, 2002, at two locations on the island of Hawaii and five locations on the island of Oahu. A total of 283 people attended these scoping meetings. During these meetings and through written submissions, the Army received numerous comments on the proposed SEIS.

A draft SEIS was developed and approved for publication on October 3, 2003. The availability of this document was announced in the Federal Register, and a forty-five day comment period followed to provide the public with an opportunity to comment on the findings of the EIS. The publication of the draft SEIS and the opening of the public comment period was

also announced in several local newspapers. On October 31, 2003, the Army decided to extend the comment period until January 3, 2004. More than 600 comments were received on the draft SEIS. The final SEIS listed these comments and the Army's responses. The EPA published the NOA of the final SEIS in the Federal Register on June 4, 2004.

The Army signed the ROD for the final SEIS on July 7, 2004 selecting the preferred alternative of transforming the 2nd Brigade via full land acquisition and infrastructure development. The ROD explains that the 2nd Brigade in Hawaii was selected to transform to a SBCT based on several factors, including the strategic significance of Hawaii in its ability to provide a military base from which the SBCT can be rapidly deployed to threats in the Pacific Rim, the already existing force in Hawaii is well suited to transform to a SBCT, and Hawaii provides the terrain and conditions most likely to be encountered in the Pacific Rim.

*Procedural History*

On January 27, 2005, Plaintiffs filed their Motion for Summary Judgment ("Plaintiffs' Motion") and Concise Statement of Material Facts in support of Plaintiffs' Motion ("Plaintiffs' Concise Statement"). On February 4, 2005, Defendants filed their Cross–Motion for Summary Judgment ("Defendants' Motion") and Concise Statement of Facts in support of Defendants' Motion ("Defendants' Concise Statement"). On February 4, 2005, Defendants also filed their Response to Plaintiffs' Concise Statement ("Defendants' Response to Plaintiffs' Concise Statement"). On February 11, 2005, Plaintiffs filed their Reply Memorandum in Support of their Motion for Summary Judgment and in Opposition to Defendants' Cross–Motion for Summary Judgment ("Plaintiffs' Reply and Opposition"). On February 11, 2005, Plaintiffs also filed their Response to De-

fendants' Concise Statement ("Plaintiffs' Response to Defendants' Concise Statement"). On February 16, 2005, Defendants filed their Reply Brief in Support of their Cross–Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment ("Defendants' Reply and Opposition").

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). The opposing party can neither stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *T.W. Elec. Serv.*, 809 F.2d at 630; Fed.R.Civ.P. 56(e). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir.1989).

## DISCUSSION

*Plaintiffs Are Precluded From Raising These Issues Now For The First Time*

Defendants point out that Plaintiffs are raising their substantive challenge to the

alternatives analysis in the PEIS now for the first time in this case. Defendants' Motion at 20. Plaintiffs did not provide any comments on the draft Army Transformation PEIS after this document was made available through a Federal Register notice on October 26, 2001 and also through notice in the USA Today. PEIS 0004593, 0004168, 0009415–442.[1] Moreover, at no point during the entire Army Transformation NEPA process did Plaintiffs comment on the PEIS or the ROD implementing the decision to transform the Army in Hawaii. *Id.*

A plaintiff may not raise an issue challenging the substantive adequacy of an agency's NEPA analysis in court when they failed to first raise an objection before the agency in the NEPA process. *Dept. of Transp. v. Public Citizen,* 541 U.S. 752, 124 S.Ct. 2204, 2213, 159 L.Ed.2d 60 (2004). "Persons challenging an agency's compliance with NEPA must structure their participation so that it ... alerts the agency to the [parties'] positions and contentions." *Id.* (quoting *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 553, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978)). By publishing the NOA for the DPEIS in the Federal Register, the Army informed the public that it was soliciting input on its proposal to transform, and that the Army-wide transformation would include Hawaii. *See Government of Guam v. United States,* 744 F.2d 699, 701 (9th Cir.1984) (Federal Register publication constitutes "formal notice to the world"). Absent exceptional circumstances, Plaintiffs' allegations cannot now serve as a basis to overturn the Army's decision. *Havasupai Tribe v. Robertson,* 943 F.2d 32, 34 (9th Cir.1991) (citing *Vermont Yankee Nuclear Power Corp.,* 435 U.S. at 553–

54, 98 S.Ct. 1197). Here, just as in *Havasupai Tribe,* there are no exceptional circumstances present to justify overturning the Army's decision.

In *Havasupai Tribe,* appellants contended that the lower court erred by rejecting their challenge to the sufficiency of an EIS. Appellants claimed that the EIS gave inadequate consideration to the effects the proposed mining would have on groundwater. The court held that rejection of this claim was justified because the tribe utterly failed to raise it during the public comment process. *Id.*

Here, Plaintiffs' attempted challenges to the PEIS are identical to those rejected by the court in *Havasupai.* Plaintiffs did not alert the Army to their concerns regarding the alternatives analysis during the PEIS public comment process and, therefore, Plaintiffs are precluded from challenging the alternatives analysis in the PEIS in this case now for the first time before this court. Without the benefit of such comments, the Army did not have the opportunity to respond with an explanation or address Plaintiffs' concerns at the proper point in the process. Plaintiffs have therefore forfeited any objection to the PEIS. *Dept. Of Transp. v. Public Citizen,* 124 S.Ct. 2204, 2213 (2004).

Moreover, even if Plaintiffs had raised these issues in a timely manner, they would not succeed based on the merits of their claims as this court holds the Army has fully complied with NEPA. As more fully detailed below, the court finds: 1) the Army complied with NEPA's public notice requirement; 2) the PEIS conducted by the Army fulfills the requirements of NEPA; and 3) the SBCT site-specific EIS complies with NEPA.

---

1.  Reference to the administrative record are abbreviated either as "PEIS" for the programmatic record or "SEIS" for the site-specific record, followed by the pertinent Bates-stamped page number.

**1254**

*The Army Complied with NEPA's Public Notice Requirement*

■ On January 4, 2005, Plaintiffs amended their Complaint to allege that the Army's compliance with NEPA's public notice requirements was deficient and, therefore, they did not have notice of the availability of the PEIS for public comment. Plaintiffs contend that Defendants failed to adequately comply with NEPA's public notice requirements by not publishing notice in local newspapers which are more widely circulated in Hawaii than is USA Today. Plaintiffs' Motion at 15.

40 C.F.R. § 1506.6 sets forth the procedures for public notice of a NEPA document as follows:

Agencies shall:

(a) Make diligent efforts to involve the public in preparing and implementing their NEPA procedures.

(b) Provide public notice of NEPA related hearings, public meetings and the availability of environmental documents so as to inform those persons and agencies who may be interested or affected.

\*　　\*　　\*　　\*　　\*　　\*

(2) In the case of an action with effects of national concern notice *shall* include publication in the FEDERAL REGISTER and notice by mail to national organizations reasonably expected to be interested in the matter and may include listing in the 102 Monitor.

(3) In the case of an action with effects primarily of local concern the notice *may* include:

(i) Notice to State and area wide clearinghouse...

(ii) Notice to Indian tribes when effects may occur on reservations.

(iii) Following State's public notice procedures...

(iv) Publication in local newspapers...

(v) Notice through other local media...

40 C.F.R. § 1506.6 (emphasis added).

While the parties dispute whether the transformation is one primarily of national or local concern, the court concludes that the dispute is not material in determining adequate compliance with 40 C.F.R. § 1506.6 and NEPA's public notice requirement. Section 1506.6 clearly indicates that even in matters of local concern, the stated notice provisions are not mandated. In *Envtl Coalition of Ojai v. Brown*, the Ninth Circuit confirmed this point, holding that "[t]he methods of notice listed in 40 C.F.R. § 1506.6(b)(3) are merely permissive." 72 F.3d 1411, 1415 (9th Cir.1995). Furthermore, the Army satisfied the mandated provisions of 40 C.F.R. § 1506.6 relating to issues of national concern by publishing notice of its intention to prepare a PEIS, a draft PEIS, and the Final PEIS in the Federal Register and the USA Today, a newspaper with national distribution. PEIS 0004163–66, 0004593, 0004167–69.

Moreover, notice was available through local newspaper coverage of the Army's intention to transform the 2nd Brigade in Hawaii during the preparation of the draft and Final PEIS. Even prior to the draft PEIS's issuance for public comment, local newspapers in Hawaii, including The Honolulu Advertiser and the Honolulu Star Bulletin, published articles on the proposed transformation in Hawaii in July 2001. PEIS 0009447–49, 0009468–69, 0009476. The Honolulu Star Bulletin published a series of articles in July 2001 that quotes the commander of the U.S. Army, Pacific Command, on the transformation of the 2nd Brigade and its potential impacts. PEIS 0009447–49, 0009461–67, 0009488–90. In those articles, the commander specifi-

cally addresses the impact that transformation in Hawaii would have on the Makua Military Reservation. Therefore, the court finds that there is compelling evidence to support the conclusion that the Army sufficiently complied with NEPA's public notice requirements.

*PEIS Conducted By The Army Fulfills The Requirements of NEPA*

■ Plaintiffs contend that the PEIS was substantively inadequate to justify Defendants' decision to transform the 2nd Brigade in Hawaii. Plaintiffs' Motion at 20. Plaintiffs assert that Defendants were obligated to provide site-specific analysis in the PEIS and that they failed to sufficiently do so. *Id.* at 20–24. The court finds this argument unpersuasive.

■ The typical role of a PEIS is to provide "sufficient detail to foster informed decision making, but site-specific impacts need not be fully evaluated until a critical decision has been made to act on site development." *Friends of Yosemite Valley v. Norton,* 348 F.3d 789, 800 (9th Cir.2003). It is preferred that site-specific evaluation occur only when "a concrete development proposal crystallizes the dimensions of a project's probable environmental consequences." *Id.*

The Army's determination that the scope of the FEIS should most specifically address the decision whether to transform and how to do so is entitled to deference. *See Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 375–76, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989); *Wetlands Action Network v. Army Corps of Eng'rs,* 222 F.3d 1105, 1115 (9th Cir.2000). The Army identified the purpose and need of Transformation as:

> [E]nabl[ing] the Army to achieve the force characteristics articulated in the Army Vision in the most timely and efficient manner possible and without compromising readiness and responsiveness.... [Using a] phased program

of transformation permits an orderly, flexible, synchronized process to be undertaken, while maintaining a force of responsiveness to national security requirements.

PEIS 0009192. The Army developed four alternatives based on the above stated purpose and need, and rejected two as being inadequate. PEIS 0009201–202.

■ NEPA's requirement with regard to an agency's consideration of alternatives is subject to a rule of reasonableness. The rule of reason "guides both the choice of alternatives as well as the extent to which the [EIS] must discuss each alternative." *American Rivers v. FERC,* 201 F.3d 1186, 1200 (9th Cir.1999). Under the rule of reason, Defendants need only consider a reasonable, not infinite, range of alternatives. 40 C.F.R. § 1502.14(a).

The Army Transformation PEIS adequately presented a broad-level analysis of the impacts of Army-wide transformation. It selected alternatives consistent with the purpose and need for transformation, and appropriately deferred site-specific analysis until such time as concrete development proposals illustrated the probable environmental impacts of projects. The court, therefore, finds that the PEIS conducted by the Army was reasonable, fulfilling the requirements of NEPA.

*The SBCT Site–Specific EIS Complies With NEPA*

■ In accordance with the PEIS, the Army subsequently performed a site-specific analysis on the potential impacts of transforming the 2nd Brigade in Hawaii once the development proposals for implementation were formulated. Plaintiffs argue that Defendants' failure to consider stationing alternatives outside Hawaii renders the SEIS inadequate in violation of NEPA. Plaintiffs' Motion at 29. Plaintiffs' argument overlooks the purpose and need

identified in the PEIS and its implementation in the SEIS.

Guided by the purpose and need in the Transformation PEIS, the SEIS described the purpose and need for the 2nd Brigade transformation as aiming to:

1. assist in bringing the Army's Interim Force to operational capability and to provide realistic field training in Hawaii.

2. provide the nation with capabilities that meet current and evolving national defense requirements.

SEIS 0051275.

Under this purpose and need, the Army developed a total of nine alternatives. SEIS 0051307–339. Of these nine alternatives, the SBCT Hawaii EIS analyzed in depth the preferred alternative, the reduced land acquisition alternative, and the "no action" alternative. The remaining alternatives were considered, but not analyzed in detail because it was determined that they did not meet the stated purpose and need for transformation. SEIS 0051330–339. The Transformation PEIS purpose and need is for transformation that enables the Army to "achieve the . . . Army Vision in the most timely and efficient manner possible and without compromising readiness and responsiveness . . . ." PEIS 0009193. The SBCT EIS incorporated this focus on efficient transformation without compromising readiness, and it is reflected in the decision of which alternative to consider.

■ An agency's choice of alternatives should be bound by some notion of feasibility, but an agency does not have to consider remote or speculative alternatives. *Wetlands Water District, et al. v. U.S. Dept. of Interior, et al.,* 376 F.3d 853, 868 (9th Cir.2004). The range of alternatives selected is reviewed by this court under a "rule of reason." *City of Carmel–By–The–Sea v. U.S. Dept. of Transp.,* 123 F.3d 1142, 1155 (9th Cir.1997). Under this rule, an EIS need not consider an infinite range of alternatives, only those that are reasonable and feasible. *Id.*

The Army reasonably narrowed the range of alternatives to achieve the purpose of the action—transforming the 2nd Brigade efficiently and rapidly without sacrificing training or readiness. An alternative to move the 2nd Brigade out of Hawaii was not reasonable in light of the Army's recognition of the strategic importance of housing a Stryker Brigade in Hawaii, the need to effectively and efficiently address security threats in the Pacific Rim, and the unique resources and infrastructure already available in Hawaii for transformation. SEIS 0048481–489. The evidence supports the Army's conclusion that Hawaii provides the terrain and conditions most likely to be encountered in the Pacific Rim and can accommodate more maneuvers than other installations, such as Fort Lewis, Washington. PEIS 0002886, 0002916, 0003004. In order to meet the stated objective, the Army further concluded that transformation was expected to occur "in place" and not by relocating units. PEIS 0009326, 0009665–66.

The Army clearly articulated its goals and the SBCT EIS used these goals to determine which alternatives were appropriate for investigation. The court finds that the SBCT site-specific EIS was reasonable and, therefore, complies with NEPA.

## CONCLUSION

For the reasons stated above, the court DENIES Plaintiffs' Motion for Summary Judgment and GRANTS Defendants' Cross–Motion for Summary Judgment.

IT IS SO ORDERED.